# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 12-md-2323 (AB) <br><br> MDL No. 2323 |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated, <br>       Plaintiffs, <br><br> v. <br><br> National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc., <br>       Defendants. | **Hon. Anita B. Brody** <br><br> **Efiled in:** 18-md-02323-AB |
| **THIS DOCUMENT RELATES TO: ALL ACTIONS** | |

## DECLARATION OF BRUCE A. HAGEN
## IN RESPONSE TO THE COURT'S MARCH 28, 2018 ORDER [ECF NO. 9833]

Bruce A. Hagen declares, pursuant to 28 U.S.C. § 1746, based upon his personal knowledge, the following:

(1) I am *sui juris* and a shareholder in the law firm Hagen Rosskopf LLC. This Declaration is based upon my personal knowledge and is filed in Response to the Court's March 28, 2018 Order (ECF No. 9833).

(2) Along with Co-Counsel Michael McGlamry at the Pope McGlamry law firm, my involvement in what became known as the NFL Concussion Litigation dates from early 2011. We

1

filed several of the initial lawsuits against the NFL in the Northern District of Georgia, cases that eventually formed the basis for MDL-2323.

(3) I have been involved as part of the group of Plaintiffs' Counsel (as defined in Mr. Seeger's Memorandum of Law in Support of his Petition for Award of Attorney's Fees to include "the law firms that have done important common benefit work for the litigation, approved by Co-Lead Counsel, and are submitting declarations in support of this Petition." ECF No. 7151-1, P. 2) since before the group was formed. I signed on to a Joint Participation Agreement along with many of the other lawyers who are in leadership positions in the present case, including Co-Lead Counsel Chris Seeger. Although I did not seek to be appointed to the PSC throughout MDL No. 2323, I was appointed to the Communications and Public Relations Committee ("CPRC"), a sub-committee of the Plaintiffs' Steering Committee ("PSC"), and was actively involved with the CPRC from its inception.

(4) As co-counsel with the Pope McGlamry law firm, we currently represent over 400 registered claimants in the NFL Concussion Litigation. At one time, the number of our clients approached 500, but many of those clients severed their relationship with us after the settlement of the present litigation was announced.

(5) As a lawyer for former NFL players, I had regular contact with both current and potential clients since first getting involved in 2011. As a result, I became aware that many of our clients were receiving false and misleading information regarding the case and their rights, particularly after the settlement had been announced. The spread of false and misleading information resulted in many clients terminating our legal services. This phenomenon was being experienced by other lawyers as well, and ultimately it led to my co-counsel pushing for the formation of Ethics Committee in January 2014, at a meeting of counsel in New York City.

(6) My Co-Counsel, Michael McGlamry, served as Co-Chair of the Ethics Committee that was formed in the case, Mr. McGlamry kept me informed of non-confidential matters so that I would have a clear understanding of the problems that our class of players were facing as well as the actions that were being taken to combat any wrongdoing.  This included retaining an Ethics Professor to address poaching, the formation of hedge-fund-backed predatory lenders who were providing incorrect information to the detriment of former NFL players, and other issues.

(7) For my part, I am adamantly against the use of cash advances, loans to players or any other kind of funding for Plaintiffs in the present case.  I do not believe that litigation funding is a good idea in any form, for any client, which is why my firm and I routinely counsel against such funding.  I fielded numerous calls from clients and others asking about cash advances on their cases.  I routinely counseled against the use of such funding companies, pointing out the outrageous interest rates that were typically charged.

(8) For me, the only exception to my blanket prohibition of cash advances was in the case of a widow whose husband died and had a compensable CTE claim.  In one such case, I had a discussion with a client who was struggling to figure out how to pay for college tuition for her son, who was about to graduate high school.  After we discussed traditional ways to pay for college, we also discussed the possibility of using a cash advance.  In her case, as a widow of a player who had CTE confirmed via autopsy and who died in the window of time where compensation was virtually guaranteed, a cash advance to pay for college tuition might have been a viable option. Ultimately, the client decided against pursuing a cash advance.

(9) In a few, very rare situations, my Co-Counsel and I had a few clients who, sadly, were truly in desperate need of funds and had exhausted all other options to come up with any money.  Some clients faced circumstances such as bankruptcy, the foreclosure of a home or

eviction from other housing, overdue education expenses and other bills that do require payment and that they cannot fund from sources other than litigation lending advances.  In such cases, where our clients are facing truly impossible financial situations, and they have exhausted all other financial resources, they sometimes, sadly, turn to litigation funding or advances.   It is my understanding that 12 different funding companies were utilized by our clients or former clients, only four of which were listed by the Court in question #3, so clearly we did not have any interest in promoting any one entity.

(10)    Until the Court's Order of December 8, 2017, it was not clear that the "No Assignment of Claims" provision, found in Article XXX, "Miscellaneous Provisions," at page 91 of the NFL Settlement, to prohibit or void all litigation funding agreements.

(11)    In answer to the Court's specific questions, I provide the following answers, all of which apply to all cases in which Pope McGlamry appears as counsel, since I am Co-Counsel with the Pope McGlamry law firm on all cases. (In further support of this Declaration, Declarant references and adopts as his own all Exhibits and supporting documentation attached to the Declaration of Michael L. McGlamry filed herein, as all information and documents attached thereto apply equally to all of the clients referenced herein).

1. My firm or any attorney associated with my law firm:

    A.  Previously represented **94** Settlement Class Members that we do not currently represent (Notices of lien have been filed as to most of these former clients);

    B.  Currently represents **403** Settlement Class Members.

2. To the best of my knowledge, the following number of Settlement Class Members previously or currently represented by my law firm or any attorney associated with my law firm:

   A. Have received a Monetary Award: **8**;

   B. Have been informed that they are entitled to receive a Monetary Award: **11** (including the 8 identified in 2A);

   C. Have applied for a Monetary Award: **33**;

   D. Other than the 11 current and former clients represented by my firm who have been informed that they are entitled to receive a Monetary Award, the eligibility of my firm's remaining current and former clients has not yet been determined, and the answer to this question is unknown, given the uncertainties of the claims administration and the NFL's appeals. That said, all claims for a Monetary Award have been and will continue to be filed with the good faith basis that the Claimant is entitled to a Monetary Award.

3. To the best of my knowledge, **10** Settlement Class Members previously or currently represented by my law firm or any attorney associated with my law firm have entered into agreements to assign their rights to a Monetary Award, entered into an agreement with any of the third-party litigation funders listed on pages 3-4 of the Court's March 28, 2018 Order (ECF No. 9833), or agreements that are similar to the agreements attached to the Court's Explanation and Order relating to the Third Party Funder Litigation (ECF No. 9531). Of this total, **1** Settlement Class Member obtained funding while represented by previous counsel. To the best of my knowledge, 3 Settlement Class Members formerly represented by my law firm or

any attorney associated with my law firm have entered into agreements to assign their rights to a Monetary Award, entered into an agreement with any of the third-party litigation funders listed on pages 3-4 of the Court's March 28, 2018 Order (ECF No. 9833), or agreements that are similar to the agreements attached to the Court's Explanation and Order relating to the Third Party Funder Litigation (ECF No. 9531).

4. Of the total number of Settlement Class Members included in my answers to question #2, I am aware of **3** Settlement Class Members that have also entered into the "Assignments" referenced in question #3.

5. For the 10 current Settlement Class Member clients that have entered into "Assignments" to third-party funders, we are obligated in accordance with the terms of said agreements.

6. My firm and any attorney associated with my firm, including my Co-Counsel and his firm, strongly discouraged our clients from seeking any litigation funding whatsoever, and thus we have not solicited, created, promoted or endorsed the "Assignments" referred to in question #3 and/or the obligations referenced in question #5.  Indeed, our records reflect that at least double the number of Settlement Class Members approached us regarding litigation funding, but more than half never followed through to obtain such funding.  To the extent "facilitating" is limited to signing the agreement forms so that the client could receive funds he or she contracted for, and if we were unsuccessful in dissuading a client from obtaining such litigation funding, we would reluctantly sign acknowledgements of our clients' obligations.

7. I do not, nor has anyone at my law firm, nor any attorney associated with my law firm, or any individual or entity related to my law firm have any direct or indirect (professional or personal) association with any of the third party litigation funders used by Settlement Class Members previously or currently represented by me, my law firm or any attorney associated with my law firm.

8. None of the "Assignments" referenced in question #3 have been resolved in accordance with the rescission process provided for in ECF No. 9517.

Redacted copies of the documents requested by the Court are attached to the Declaration of Michael L. McGlamry that's being filed herein, and are incorporated and adopted by the undersigned.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 1, 2018, in Atlanta Georgia.


                                              /s/ Bruce A. Hagen
                                             Bruce A. Hagen
                                             Georgia State Bar No. 316678

119 N. McDonough Street
Decatur, GA 30030
(404) 522-7553
(404) 522-7744 – fax
Bruce@Hagen-Law.com

**CERTIFICATE OF SERVICE**

   I hereby certify that on May 1, 2018, I caused the foregoing document to be filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, which will provide electronic notice to all counsel and parties.

                                            /s/ Bruce A. Hagen