IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE:** NATIONAL FOOTBALL LEAGUE<br>PLAYERS' CONCUSSION INJURY LITIGATION<br><br><br>Kevin Turner and Shawn Wooden, on behalf<br>Of themselves and others similarly situated,<br><br>                              Plaintiffs,<br>                    V<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL<br>Properties, Inc.,<br>                              Defendants<br><br><br>THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | NO. 2:18-md-02323-AB<br><br>MDL NO.2323<br><br><br><br>No. 2:12-md-02323-AB<br><br>MDL NO. 2323<br><br><br><br><br><br><br><br>Hon. Anita B. Brody |

**DECLARATION OF GENE LOCKS
PURSUANT TO THE
COURT'S ORDER DATED MARCH 28, 2018**

I, Gene Locks, pursuant to 28 U.S.C. §1746, declare as follows based upon my personal information, knowledge and belief:

**PRELIMINARY STATEMENT**

On April 18, 2018 this Court issued an order denying Locks Law Firm (LLF)'s Motion for Appointment as Administrative Counsel. In that Order the Court identified one of the grounds for its ruling as follows:

> The Locks Law Firm's role in facilitating Third-Party Funding Agreements of
> Class Members prohibited under the settlement agreement. This undermines any

1

claim by Locks Law Firm that it would be able to faithfully administer the agreement.

LLF did not anticipate that any issue involving third-party funders would be raised in the opposition to LLF's Motion for Appointment as Administrative Counsel filed by Co-lead counsel Chris S. Seeger ("Seeger"), which was notably referred to in the NFL's opposition to the same Motion even though the Seeger opposition had not been filed at the time the NFL's opposition was filed. The Court specifically denied LLF the opportunity to reply to the oppositions of Seeger and the NFL despite LLF's request that it be permitted to do so.

LLF has no objection to the Court's March 28, 2018 Order, but LLF fails to see any way in which the information and materials requested in that Order are relevant to the issue of Class Benefit Fees. Given that the Court has linked the two issues in its Order, LLF feels compelled to add this Preliminary Statement. LLF also incorporates by reference its recently filed Motion for Reconsideration of the Denial of its Motion for Appointment as Administrative Counsel (ECF No. 9921). LLF respectfully requests the opportunity to produce all of the evidence included or described in LLF's Motion for Reconsideration before any rulings are made on any issues that may arise during the hearing on Class Benefit Fees scheduled for May 15, 2018.

LLF has at all times fulfilled its obligations as class counsel to the extent it has been given the opportunity to do so. LLF has never recommended and/or encouraged funding arrangements for any client in any matter, including in the matter before this Court. In this litigation, as in every case we have ever handled, we specifically attempted to dissuade clients and their families from obtaining advances.

A number of LLF clients in this case confronted dire circumstances that led the former players to conclude that they needed to pursue funding arrangements despite our recommendation to the contrary. In those cases, we assisted our clients upon their request. That assistance was often purely ministerial in nature: signing authorization forms that would allow portions of the client's monetary awards to be transferred to the funders in accordance with the terms of the advance; gathering and transmitting underlying documentation the lenders required; and processing the advance for clients whose financial need was intensely time-sensitive. In some cases, the firm tried to negotiate better terms for our clients or determine which among several competing lenders would offer clients the best terms and to provide that information to the client.

At no time prior to the Court's December 8, 2017 Explanation and Order relating to the Third Party Funder Litigation (ECF No 9531) was LLF aware, nor did the firm have any notice, that any of these funding arrangements would be prohibited by the language of the Settlement Agreement. LLF was familiar with similar clauses prohibiting assignment of claims in other settlement agreements and has never known such contract language to be interpreted to prohibit partial advances on future monetary awards.

In accordance with this Court's Order of March 28, 2018, LLF instructed our staff to review all new and pending claims to determine which clients had funding arrangements. In addition, our IT Department assisted us in gathering all e-mails of the attorneys responsible for work on behalf of the clients that might be responsive to the Court's request as well as our electronic files and computer drives, and attorneys at the firm reviewed those materials. We attach documents in response to the Court's request for thirty-three (33) clients that we have identified by the list attached.

The summary of those thirty-three (33) clients identified is as follows:

- We were discharged by one (1);

- Three (3) of the thirty-two (32) remaining are unfiled and no claim is pending;

- Of the remaining twenty-nine (29), seven (7) of the clients with funding agreements have repaid the funding companies, either with or without rescissions;

    o   Two (2) were paid prior to the Court's Order of December 8, 2017 and the funding companies have been repaid;

    o   Two (2) involved advances from Esquire Bank and have been repaid;

    o   Three (3) were rescinded in accordance with the Court's Order;

- Of the remaining twenty-two (22) cases – six (6) have been denied, four (4) have been approved but appealed by the NFL and not yet been paid, eleven (11) are pending and one (1) was paid directly by the administrator after the funding company refused to agree to the rescission.

Attached as Exhibit 2 is a list of each of the exhibits for each player in accordance with the Court's Order and with an exhibit list attachment identifying the individual claimant by letter.

## ANSWERS TO SPECIFIC QUESTIONS

The answers to the specific questions posed in the Court's Order of April 28, 2018 are as follows:

1.A.   As of 12/31/14 our Firm had been retained by or consulted by 1,591 players or their representatives.  At the time of final registration for the Concussion Claims Settlement Fund, in August of 2017, we had closed 479 files and registered 1,127 players for the Fund.  Since that time we have closed approximately 15 or 20 additional cases and have opened an additional 12 new cases.

1.B.   The Locks Law Firm currently represents 1,098 registered claimants.

2.A.   Thirty-one (31), Settlement Class Members currently represented by LLF have received a monetary award.  We have no way of knowing how many class members previously represented by our Firm have received monetary awards.

2.B.   Other than the thirty-one (31) class members identified in the response to question 2.A. above, an additional nineteen (19) Class Members currently represented by our Firm have received notices of monetary awards but have not yet received these awards.  We have no way of knowing how many, if any, class members previously represented by our Firm have been informed that they are entitled to receive a monetary reward.

2.C.   In addition to the 31 class members who have received a monetary award, an additional fifty-five (55) class members currently represented by LLF have filed claims.  Six (6) of those claims have been denied.  Some have been appealed.  We are aware of forty (40) former clients who have applied for monetary awards due to lien notifications we have received from the Settlement Administrator.

2.D.   We believe that all of our clients with currently pending claims should be eligible to receive monetary awards.  We have no way of knowing how many of our previous clients are or will be eligible for monetary awards.

3.	Thirty-two (32) players currently represented by our Firm have entered into funding agreements of which six (6) of those thirty-two have been funded by Esquire Bank. Seven (7) others have applied to Esquire for funding. One of those players entered into that agreement before we represented him. We are unaware of additional players who are no longer represented by our Firm who entered into such agreements. If any former clients have done so, it was not while represented by our Firm.

4.	Twenty-nine (29) of the class members currently represented by LLF who have filed claims have also entered into the assignments referred to in question #3, including assignments to Esquire Bank.

5.	In each of the thirty-one (31) cases in which a class member currently or previously represented by LLF entered into an agreement with a funding company (including Esquire Bank) while represented by LLF, LLF was obligated to pay or forward a portion of the client's monetary award to the funding company based on the agreement. As set forth above, in seven (7) of those cases, the advances have been either repaid or rescinded and repaid.

6.	All agreements with funding companies entered into by clients at the time the clients were represented by LLF were administered by my partner David Langfitt. Neither I nor any other member of the Firm solicited, encouraged, or facilitated the formation of any of these agreements.

Mr. Langfitt had been contacted either by clients or by funding companies who had already spoken with clients, and they requested that he sign paperwork necessary for the clients to receive cash advances. As set forth in the answers to questions 3 and 5 earlier in this declaration, Mr. Langfitt signed such forms for 31 clients at the clients'

6

request.  In every instance, consistent with longstanding Firm policy, he explained to the clients the fees and interest rates involved and the recourse versus non-recourse nature of the agreements.  In every instance, he tried to dissuade the clients from obtaining such advances.  On a number of other occasions, Mr. Langfitt succeeded in persuading clients not to accept advances from any funding company.

On several occasions, Mr. Langfitt attempted to persuade funding companies who approached him either through clients or at the request of clients to provide better terms for the clients.  This led to conversations or correspondence with representatives of the following entities to further discuss the terms of the agreements:  Esquire Bank, Atlas Legal Funding, LLC, Krunch Cash, Park Settlement, and Resilience.  On at least one occasion, Mr. Langfitt tried to negotiate better terms and rates with Atlas for clients who had already insisted on advances.  These included three specific clients who, during the same period of time, had instructed the firm to address potential advances with Atlas, among other funding companies.  In this instance, the firm sought to convince Atlas to reduce rates the clients would have to pay.

At no time did Mr. Langfitt or any other member or representative of LLF direct any client to any specific funding company.  No client of LLF entered into an agreement with a funding company, including Esquire Bank, after the Court's Order and Explanation of December 8, 2017 holding that such agreements are prohibited by the Settlement Agreement.  When Mr. Langfitt addressed client requests that he sign funding company agreements, he had no reason to believe that the agreements were prohibited by the terms of the Settlement Agreement.  Rather, at all times he was properly fulfilling his

ethical obligation to the clients of LLF. *See* Declaration of Alfred W. Putnam, Esquire attached hereto as Exhibit 1.

Each of the clients who entered into such agreements informed the Firm that they desperately needed the money they received from the advances. With the clients' authority, LLF will present to the Court *in camera* the specific circumstances for each client.

7. Neither LLF nor any attorney with LLF or any entity related to LLF has any direct or indirect (professional or personal) association with any third party litigation funder.

8. Three (3) class members currently represented by LLF have executed rescission waiver forms and their advances have been resolved in accordance with the rescission process provided for in ECF No. 9517 - Players J, P, W.

Attached as Exhibit 2 is the List of Locks Law Firm Player Exhibits. Attached as Exhibits A-GG are the redacted Assignments entered into by Settlement Class Members currently and/or previously represented by LLF.

I declare under penalty of perjury that the forgoing is true and correct.

Dated: May 1, 2018                                    Respectfully submitted,

/s/ Gene Locks
Gene Locks, Esq.
LOCKS LAW FIRM
The Curtis Center
Suite 720 East
601 Walnut Street
Philadelphia, PA 19106
Phone: 215-893-3423
Fax: (215) 893-3444
glocks@lockslaw.com

## CERTIFICATE OF SERVICE

    I hereby certify that on this 1st day of May, 2018, I caused the foregoing Declaration of Gene Locks Pursuant to the Court's Order Dated March 28, 2018, to be served via the Electronic Case Filing (ECF) system in the United States District Court for the Eastern District of Pennsylvania, on all parties registered for CM/ECF in the above-captioned matter.

                                  /s/ Gene Locks
                                  Gene Locks, Esq.