UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION <br><br> Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*, <br>      Plaintiffs, <br><br>      v. <br><br> National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc., <br>      Defendants. <br><br> THIS DOCUMENT RELATES TO: ALL ACTIONS | No. 2:18-md-02323-AB <br><br> No. 2:12-md-02323-AB <br><br> MDL No. 2323 <br><br> **Hon. Anita B. Brody** |

**DECLARATION OF STEVEN C. MARKS AND RICARDO M. MARTINEZ-CID PURSUANT TO THE COURT'S MARCH 28, 2018 ORDER**

      STEVEN C. MARKS and RICARDO M. MARTINEZ-CID declare, pursuant to 28 U.S.C. § 1746 and this Court's Order dated March 28, 2018 (ECF No. 9833), based upon personal knowledge, information, and belief:

    A. **PRELIMINARY STATEMENT**

      1.     Steven C. Marks, Esq., and Ricardo M. Martinez-Cid, Esq. are partners of the law firm Podhurst Orseck, P.A, and are members of the Plaintiffs' Executive Committee in this litigation (ECF No. 64). Mr. Marks also serves as Class Counsel for the Settlement (ECF No.

6510).  As described in prior declarations from Mr. Marks (ECF No. 7151-8) and Co-Lead Counsel Christopher Seeger (ECF No. 8447 at 11), Podhurst Orseck has played an integral and substantial role from the outset in advancing the litigation, negotiating the Settlement, and defending the Settlement against attacks from objectors.  For this sustained, dedicated work on behalf of the Settlement Class over the past seven years, Podhurst Orseck is seeking common benefit fees from the Attorneys' Fees Qualified Settlement Fund.

      2.      We fully support the Court's efforts to expose and deter the predatory conduct of unethical attorneys and lenders who steered Settlement Class Members into usurious loans.  As is evident from our responses to the Court's questions below, Podhurst Orseck has not engaged in any such misconduct.  We have no personal, professional, or financial affiliation with any of the third-party litigation funders that have taken advantage of Settlement Class Members.  And we have never promoted such third-party litigation funders to Settlement Class Members.  To the contrary, it is our firm's longstanding policy and practice to strongly *dissuade* our clients from taking such loans, and numerous Settlement Class Members terminated their representation with us following our refusal to arrange for such loans.

      3.      Notwithstanding our strong and repeated advice against entering into loans secured by potential Monetary Awards, however, a small percentage of our current and former clients separately negotiated and contracted with third-party litigation funders for loans secured by potential Monetary Awards.  In addition, when two of our former clients who were suffering from a terminal illness–one of whom died before the Settlement became effective—advised us that they were pursuing Settlement-based loans before the Effective Date, we advised them to avoid accepting loans from predatory, usurious third-party litigation funders, and instead assisted them in negotiating reasonable loans with Esquire Bank, that was recommended to us by Co-Lead

Counsel Christopher Seeger. Aside from these two loans from Esquire Bank, which we understand has not been accused of engaging in any predatory or usurious practices, our firm was not involved in negotiating or creating the loans that Settlement Class Members accepted. For such loans, our involvement was limited to discouraging Settlement Class Members from accepting the loans, and when they declined to follow our advice and insisted that we cooperate with their chosen lender, signing a limited acknowledgement form.

4. Candidly, when we acceded to those clients' insistent requests, we did not interpret the Settlement Agreement as prohibiting Class Members from accepting loans secured by the expected value of their Monetary Awards. Co-Lead Counsel Christopher Seeger's active efforts in securing two such loans from Esquire Bank for our former clients in 2015 was consistent with our understanding of the Settlement Agreement. *See* Former Player L Documents at PO-L000004 (stating in a May 28, 2015 email that "I have a [credit] line set up for [the Settlement Class Member] if he wants it," and in response to whether he could arrange for a similar loan to another Settlement Class Member, stating that "I'm sure I can get it done").

5. We understand that the information the Court has requested in its March 28, 2018 Order will be used to advance its laudable objective of exposing and stopping the predatory practices that have disadvantaged Settlement Class Members. To this end, we trust that the Court will distinguish between, on the one hand, the corrupt, conflicted practices of those who preyed on Settlement Class Members, and on the other, the attorneys, like us, who, consistent with our ethical duties, attempted to dissuade Settlement Class Members from accepting usurious loans and only complied with our clients' directions to sign acknowledgement forms when our advice was not followed.

6. The Court's Order suggests that the Court views the assignments as "relat[ed] to the allocation of class benefit fees among counsel representing the class[.]" (ECF No. 9833 at 1). It would seem inequitable to reduce the share of common benefit fees allocated to a firm that labored for years on behalf of the Settlement Class simply because a small percentage of its clients, against its strong advice, insisted upon entering into loans subsequently deemed prohibited, particularly where the Court has already ruled that the Class Members are protected from paying the disadvantageous interest rates.

### B. Answers To The Court's Questions

1. **How many Settlement Class Members have you, your law firm or any attorney associated with your law firm:**

   a. **Previously represented in this litigation and do not currently represent?**

   RESPONSE: We previously represented 274 Settlement Class Members who have terminated their representation with our firm.

   b. **Currently represent in this litigation?**

   RESPONSE: We currently represent 295 Settlement Class Members.

2. **How many Settlement Class Members previously or currently represented by you, your law firm or any attorney associated with your law firm:**

   a. **Have received a Monetary Award?**

   RESPONSE: Two Settlement Class Members whom we currently represent have received Monetary Awards. We also believe that two Settlement Class Members whom we previously represented may have received Monetary Awards after they terminated their representation with our firm.

   b. **Have been informed that they are entitled to receive a Monetary Award?**

>RESPONSE: Four Settlement Class Members whom we currently represent have been informed that they are entitled to receive Monetary Awards. We expect one of the four Monetary Awards to be scheduled for funding in the near future, as it recently was affirmed following an NFL appeal. The other three Monetary Awards are subject to audits by the Claims Administrator. We do not have any additional information regarding Monetary Awards for Settlement Class Members who terminated their representation with us.

c. **Have applied for a Monetary Award?**

>RESPONSE: Sixteen of the Settlement Class Members whom we currently represent have submitted claims for Monetary Awards. We do not have sufficient information regarding how many Settlement Class Members who previously terminated their representation with us have submitted claims for Monetary Awards.

d. **That you have knowledge that they will be eligible to receive a Monetary Award?**

>RESPONSE: All 295 Settlement Class Members whom we currently represent have been registered for the Settlement and thus are "eligible" to receive a Monetary Award if they receive a Qualifying Diagnosis during the 65-year term of the Settlement. At this time, we do not have sufficient information to predict if or when the Settlement Class Members whom we represent will receive Monetary Awards, other than the sixteen Settlement Class Members for whom we have submitted claims. We also do not have sufficient information to predict if or when the Settlement Class members who terminated their representation with us will receive Monetary Awards.

3. **How many Settlement Class Members previously or currently represented by you, your law firm or any attorney associated with your law firm have entered agreements to assign their rights to a Monetary Award ("Assignment(s)")?**[1]

   RESPONSE:  Based on the information provided and available to us, we believe that eight Settlement Class Members whom we currently represent (Clients A-H), and six Settlement Class Members who have terminated us (Former Clients I-N), have entered into loan agreements in which they assigned their rights to Monetary Awards to the lenders.

4. **Of the total number of Settlement Class Members included in your answer(s) to question #2, how many of these Settlement Class Members have also entered into the Assignments referred in question #3?**

   RESPONSE:  Based on the information provided and available to us, one Settlement Class Member whom we currently represent (Client H), and two Settlement Class Members who are former clients (Former Clients L-M), have entered into the Assignments referenced in question number three and have either been awarded or received Monetary Awards.  All three such Assignments were made with Esquire Bank.

---

[1] Assignments include any agreements that are similar to the agreements attached to this Court's Explanation and Order relating to the Third Party Funder Litigation (ECF No. 9531).  Assignments further include, but are not limited to, any agreement with any of the following Third Party litigation funders: Atlas Legal Funding, LLC (to include the following related entities:  Atlas Legal Funding I, L.P., and Atlas Legal Funding II, L.P.);Cambridge Capital Group, LLC (to include the following related entities: Cambridge Capital Group Equity Option Opportunities L.P., and Cambridge Capital Partners, L.P.); Cash4Cases, Inc.; Global Financial Credit, LLC; HMR Funding, LLC (to include the following related entities: HMRF Fund I, LLC and HMRF Fund II, LLC); Justice Funds/Justicefunds, LLC; Ludus Capital, LLC; Peachtree Funding Northeast, LLC/Settlement Funding, LLC (to include the following related entities:  Peachtree Settlement Funding, LLC, Peachtree Originations, LLC, Peachtree Financial Solutions, LLC, Peach Holdings, LLc, PeachHI, LLC, Orchard Acquisition Co. LLC, JGWPT Holdings, LLC, JGWPT Holdings, Inc., J.G. Wentworth, LLC, J.G. Wentworth S.S.C. Limited Partnership, J.G. Wentworth Structured Settlement Funding II, LLC, and Structures Receivables Finance #4 LLC); Pravati Legal Funding/Pravati Capital, LLC; RD Legal Funding, LLC (to include the following related entities:  RD Legal Finance, LLC, and RD Legal Funding Partners, LP); Thrivest Specialty Funding, LLC; Top Notch Funding/Top Notch Lawsuit Loans/Top Notch Funding II, LLC; Walker Preston Capital Holdings, LLC; Case Strategies Group (formerly, NFL Case Consulting, LLC); Legacy Pro Sports, LLC.

5. **Are you, your law firm or any attorney associated with your law firm obligated to pay or forward (directly or indirectly) any portion of a Settlement Class Member's Monetary Award to any third party litigation funder?**

    RESPONSE:  When our clients declined to follow our advice against accepting Settlement-based loans, our clients directed us to sign documents acknowledging the existence of the loans.  As a firm policy and practice, we refused to sign documents prepared by the lenders suggesting that we advised our clients regarding the loans or offered any opinion about their enforceability.  Instead, per our clients' directions, we generally prepared and signed a far more limited document merely acknowledging our representation of the Settlement Class Member and basic facts about him or his case, and agreeing, as the Settlement Class Member's counsel, to withhold any sums recovered in our Trust Account until such time as his debt has been satisfied or we have received instructions to pay.

6. **Explain any other role that you, your law firm, or any attorney associated with your law firm may have had in creating, promoting, or facilitating the Assignments referenced in question #3 and/or the obligations referenced in question #5.**

    RESPONSE:  It was the established policy and practice of our firm to dissuade Settlement Class Members whom we represented from accepting Settlement-based loans. We did not create or promote any loans to Settlement Class Members.  When our clients declined to follow our strong advice against accepting Settlement-based loans, we signed the acknowledgement forms, as directed by our clients, described in response to question 5.  In addition, when two of our former clients (Former Clients L-M) who were suffering from a terminal illness–one of whom died before the Settlement became effective—advised us that they were pursuing Settlement-based loans before the Effective Date, we advised them to avoid accepting loans from predatory, usurious third-party litigation funders, and

instead assisted them in negotiating reasonable loans with Esquire Bank, that was recommended to us by Co-Lead Counsel Christopher Seeger.

7. **Do you, your law firm, any attorney associated with your law firm or any individual or entity related to your law firm have any direct or indirect (professional or personal) association with any of the Third Party litigation funders used by Settlement Class Members previously or currently represented by you, your law firm or any attorney associated with your law firm? If so, provide details of that association. If any of these individuals and/or entities had such an association in the past, provide details of that association. If any of these individuals and/or entities anticipates having such an association in the future, provide details of that association.**

    RESPONSE: No.

8. **Have any of the Assignments referenced in question #3 been resolved in accordance with the rescission process provided for in ECF No. 9517? If so, indicate those that have been resolved by their designed letter (See "Documents," below) and the date of the resolution.**

    RESPONSE: We have not been notified by any of the lenders that are parties to the Assignments referenced in question 3 that the Assignments have been resolved in accordance with the rescission process provided for in ECF No. 9517.

C. DOCUMENTS

We performed a diligent search of our firm's records for documents identified in paragraphs A-D of the Court's Order and have produced herewith the responsive documents that we located, with redactions to protect the personal information of Settlement Class Members.[2]

---

[2] Since the "written communications" the Court ordered to be produced are those with "any third party litigation funder," we have not included privileged communications with our clients.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 1, 2018

**PODHURST ORSECK, P.A.**
SunTrust International Center
One S.E. 3rd Ave, Suite 2300
Miami, FL  33131
Tel.: 305-358-2800
Fax:  305-358-2382

*/s/ Steven C. Marks*
STEVEN C. MARKS

*/s/ Ricardo M. Martinez-Cid*
RICARDO M. MARTINEZ-CID

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2018, I caused the foregoing document to be filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, which will provide electronic notice to all counsel and parties.

*/s/ Steven C. Marks*
STEVEN C. MARKS

*/s/ Ricardo M. Martinez-Cid*
RICARDO M. MARTINEZ-CID